UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LaSHAWN PETTIES, Next
Friend of KP, a minor,

       Plaintiff,                              Case No. 16-10743
                                                   Hon. Mark A. Goldsmith

vs.

HOWARD COPELAND, et al.,

       Defendants.
_____/

## OPINION & ORDER GRANTING DEFENDANTS' MOTION
## FOR QUALIFIED PROTECTIVE ORDER (Dkt. 47)

Plaintiff KP is a minor who, by his Next Friend LaShawn Petties, brings a § 1983 claim against workers at a residential treatment facility, as well as the facility itself, in connection with injuries he suffered there. In addition to the § 1983 claim, the complaint alleges assault and battery under Michigan law. Defendants have moved for a Qualified Protective Order ("QPO") permitting them to interview KP's treating physicians ex parte (Dkt. 47). Plaintiff has signed authorizations for release of records and has no objection to producing the treating physicians for depositions, but objects to interviews. See Pl. Resp. at 5-6 (Dkt. 49).

The parties focus on the Health Insurance Portability and Accountability Act ("HIPAA"), which was enacted in 1996 and provides certain privacy measures for "any information, whether oral or recorded in any form or medium that is created and received by a healthcare provider and relates to the past, present or future physical or mental health or condition of an individual." 42 U.S.C. § 1320d(4). The Secretary of Health and Human Services has promulgated regulations to

1

protect the privacy of this information. See 45 C.F.R. § 164.500, et seq. Two regulatory provisions are relevant to this issue: 45 C.F.R. § 164.512(e)(1)(i) provides:

> (1) Permitted Disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding: (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order. . . .

And 45 CFR § 164.512(e)(1)(v) states as follows:

> For the purposes of paragraph (e)(1) of this section, a Qualified Protective Order means . . . an order of a court or of an administrative tribunal or stipulation by the parties to the litigation or administrative proceeding that:
>
> > (A) Prohibits the parties from using or disclosing the protected health information for any purposes other than the litigation or proceeding for which such information was requested; and
> >
> > (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

(Emphasis added.)[1] Although the HIPAA regulations do not explicitly mention the ex parte interview, federal law in this circuit permits this form of discovery. See, e.g., Hancock v. Dodson, 958 F.2d 1367 (6th Cir. 1992); Thomas v. 1156729 Ontario Inc., 979 F. Supp. 2d 780 (E.D. Mich. 2013).

Defendant claims that the Michigan Supreme Court case of Holman v. Rasak, 785 N.W.2d 98 (Mich. 2010), compels the conclusion that "HIPAA does not preempt Michigan law permitting defense counsel to seek ex-parte interviews with the Plaintiff Minor's medical and

---

[1] Both parties assume the applicability of 45 CFR § 164.512(e)(1)(ii). This provision, however, is inapposite to a request for a court order, as it explicitly deals with a situation in which "a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court." Id. (emphasis added).

mental health care providers, provided that reasonable efforts have been made to secure a Qualified Protective Order," therefore requiring entry of the requested QPO. See Defs. Mot. at 3-4. It has been held, however, that Holman's conclusion — that HIPAA does not preempt state law — "is plainly incorrect." Thomas, 979 F. Supp. 2d at 783 (collecting cases and listing reasons why, contrary to Homan, Michigan law is not "more stringent" than HIPAA).

Notwithstanding that fact, however, Defendants have shown entitlement to the QPO they request. QPOs must contain certain safeguards. First, the protective order must prohibit the defendants from disclosing the plaintiff's protected information outside the scope of the litigation. Id. at 785-786 (citing 45 C.F.R. § 164.512(e)(1)(v)(A); Croskey v. BMW of N. Am., No. 02-73747, 2005 WL 4704767, at *2 (E.D. Mich. Nov. 10, 2005)). Second, the protective order must require the defendants to return or destroy the protected information when the litigation concludes. Id. (citing 45 C.F.R. § 164.512(e)(1)(v)(B); Croskey, 2005 WL 4704767, at *2). Third, some judges require the protective order to contain "clear and explicit" notice to the plaintiff's physician about the purpose of the interview and that the physician is not required to speak to defense counsel. Id. (citing Croskey, 2005 WL 4704767, at *5; Palazzolo v. Mann, 09-10043, 2009 WL 728527, at *4 (E.D. Mich. Mar. 19, 2009); Harhara v. Norville, 07-CV-12650, 2007 WL 2713847, at *4 (E.D. Mich. Sept. 18, 2007)). The proposed QPO in the instant case meets all three of these requirements. See Proposed QPO, Ex. B to Defs. Mot. (Dkt. 47-3).

Even though Defendants' proposed QPO meets the minimum requirements for issuance, "qualified protective orders for ex parte interviews do not issue automatically, and HIPAA does not require a court to issue them. If a plaintiff shows a specific reason for restricting access to her or his treating physicians, such as sensitive medical history irrelevant to the lawsuit, a court may restrict ex parte interviews and disclosure of medical records." Thomas, 979 F. Supp. 2d at

3

784 (quoting Pratt v. Petelin, 09-2252-CM-GLR, 2010 WL 446474, at *7 (D. Kan. Feb. 4, 2010)). Here, KP offers no good reason, such as sensitive information in the medical records, why the ex parte interview should not be permitted. See generally Pl. Resp. Plaintiff's appeal to the availability of depositions and document production, see id. at 5-6, is unavailing. Although restricting a party to formal discovery may be appropriate sometimes, such a restriction should require justification for costly depositions or other discovery if it is not yet known whether such discovery will be useful. Thomas, 979 F. Supp. 2d at 785 (quoting Soto v. ABX Air, Inc., No. 07–11035, 2010 WL 4539454, at *3 (E.D. Mich. Nov. 3, 2010)); see also Palazzolo, 2009 WL 728527, at *3 (stating, in an identical context, that "it is 'routine practice to talk with each witness before trial to learn what the witness knows about the case and what testimony the witness is likely to give[,] and 'there is no justification for requiring costly depositions without knowing in advance that the testimony will be useful.'" (quoting Domako v. Rowe, 475 N.W.2d 30, 36 (Mich. 1991)). "Informality in the discovery of information is desired.'" Thomas, 979 F. Supp. 2d at 785 (quoting Cotton v. Hinton, 559 F.2d 1326, 1332 (5th Cir. 1977)). In its discretion, the Court considers the applicability of these general discovery principles as establishing good cause to issue the QPO.

Accordingly, Defendants' motion for a qualified protective order (Dkt. 47) is granted. Defendants shall submit a separate copy of their proposed qualified protective order (Dkt. 47-3) via the Utilities function of CM/ECF for entry.

SO ORDERED.

Dated: December 1, 2016        s/Mark A. Goldsmith
       Detroit, Michigan        MARK A. GOLDSMITH
                                United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 1, 2016.

s/Karri Sandusky
Case Manager

5